### THE STATE OF VERMONT *v.* JOHN HARTIGAN.

*Criminal law. Attempt to commit rape.*

If one lay hold of a woman and use force upon her, with intent to have sexual intercourse with her against her will, and she resist his attempt for a while, but finally consents to the sexual connection then had with him, he is guilty of an assault, with intent to commit a rape.

INFORMATION in two counts, the first charging rape, and the second an assault with intent to commit a rape. Plea not guilty, and trial by jury at the December Term, 1859,—PIERPOINT, J., presiding.

State *v.* Hartigan.

The prosecution called Orilla Vincent, the person upon whom the offence was alleged to have been committed, as a witness, who testified in substance as follows:

" On Sunday morning, Mr. and Mrs. Rockwell went to meeting. I was their hired girl. No one else there. Respondent came into the house; offered to play with me. I told him no. He said yes, that is the way the girls always do. He said he wanted something to eat. I said he had only just been to breakfast. I went into the pantry to get him something to eat. The cat was in there; I drove her out. He came in and asked me if I did not want to have a little baby. I told him no, I would not have one for three hundred dollars. He took hold of me and pushed me against a flour barrel. I told him to let me go, he hurt me against the barrel. He then pushed me on to the floor and forced me. When he went out I locked the pantry door. He went round to the window. I told him if he came into the window I would tell Mr. Rockwell. I went up stairs to my room. He came up and wanted me to open the door, and I would not. He said he would pay me if I would not tell; that he would give me a silk shawl; that he had hired to Mr. Rockwell for two or three months, and he would give me anything if I would not tell. When Mrs. Rockwell came home I was setting the table.

When he came into the buttery I did not know what he wanted. When he took hold of me I was frightened and could not resist. When I was down he had his hands on my arms and kept them there all the time. His mouth was right on my mouth so that I could not speak or cry out. After he got through I could see marks on my knee and on my arm.

*Cross-examined.*—I am twenty-one years old next month; have worked out four years; the only girl Mrs. Rockwell had; their family consists of eight persons. Think it was about half an hour after John came into the pantry before he got through. He staid there longer, an hour and a quarter in all. He lay on me just as long as he wanted to. He lay on me till I heard somebody coming. I told him I heard somebody coming; then he got off. I did hear somebody coming. He then went and locked the front door, He talked with me a little before he took me on to the floor.

When he took hold of me, I said go away. I could·say nothing more; this was all the noise I made; he had his mouth right on mine all the time, so that I could not cry out. I told him when he pushed me against the barrel that he hurt me; then he took me on to the floor.

His hands were holding my arms all the time, from the time he took me down until he got through. He offered me some money; I would not take it; he threw it on the floor. This was a little before Mr. Rockwell came home. It was twenty-five cents; I picked it up and gave it to Mr. Rockwell."

*Mrs. John Rockwell*—" When I came home Orilla was spreading the table; I spoke to her and passed along; I asked her what was the matter; she made no complaint until I spoke to her and asked her what was the matter; she then complained of his abusing her. I saw some prints of nails on her arms, and some spots rather black and blue."

This was all the testimony on the part of the prosecution. The complainant was a woman of good health and strength, of medium size.

The prisoner was apparently about thirty years of age, of medium size, and apparent strength.

The respondent introduced Dr. Charles L. Allen and Dr. Z. Bass, physicians and surgeons, of good professional character and reputation, who testified that from the size and appearance of the parties, it was practically impossible that sexual connection or penetration could have taken place under the circumstances stated by the witness, Orilla Vincent, unless she had consented thereto, and on cross-examination gave their reasons for such opinion.

This was all the evidence in the case.

The court charged the jury in a manner satisfactory to the prisoner's counsel, as to the first count, and as to the second count, the court told the jury that if they found that the respondent, upon the occasion testified to by Orilla Vincent, laid hold of her person and pushed her against the barrel, and on to the floor, with the intention and for the purpose of having sexual intercourse with her by force and against her will, and that she resisted for a time, but ultimately yielded, they might find him

40

guilty under that count, although they might find that the sexual connection which he then had with her was with her consent. To this charge the respondent excepted.

The jury acquitted the prisoner on the first, and convicted him on the second count,

*Roberts & Chittenden*, for the respondent.

*W. F. Bascom*, State's Attorney, and *J. W. Stewart*, for the prosecution.

KELLOGG, J.  The information against the respondent in this case contained two counts, the first charging him with the commission of the crime of rape upon one Orilla Vincent, and the second charging him with an assault upon the same woman with intent to commit rape upon her.  On trial the respondent was acquitted on the first count, and convicted on the second count.

The evidence on the trial is detailed in the respondent's exceptions, and the court instructed the jury that if they found that the respondent, upon the occasion when, as it was alleged and testified to by the woman Vincent, each of the said crimes was committed, laid hold of her person, and pushed her, as stated in her testimony, with the intention and for the purpose of having sexual intercourse with her by force and against her will, and that she resisted for a time, but ultimately yielded, they might find him guilty under the second count, although they might find that the sexual connection then had by him with her, which followed, was with her consent.  The respondent excepted to the charge of the court on this point.

Whatever might be our opinion respecting the sufficiency of the evidence to warrant a conviction of the respondent on either count, our duty at this time is to be confined to the examination of the errors assigned in the charge of the court to the jury, to which the respondent's exceptions exclusively relate.  It is an assumption of the very point in controversy to say that the facts given in evidence constitute one entire transaction, and that as the jury have acquitted the respondent of the greater offence, he cannot be convicted of a lesser one on testimony which was a part of the evidence introduced to establish his guilt of the

State *v.* Hartigan.

greater offence. The jury have found by their verdict that the respondent did, on the occasion testified to, assault the woman with the intention and for the purpose of having sexual intercourse with her by force and against her will, and that she resisted for a time, although she ultimately yielded. These facts are all which are essential to be established in order to make out the proof that the crime was complete. And we consider that the charge of the court in respect to the resistance of the woman referred by reasonable intendment to a real resistance on her part, made in earnest and good faith, and that the charge, so understood, was all which could be required on that point.

But it is claimed that the subsequent yielding and consent of the woman to the sexual intercourse, which followed, has relation, back to, and covers the preceding acts ; or, stated in equivalent words, that the ultimate consent of the woman should have a retro-active effect, by relation, and operate as a condonation of a crime which had become complete. The rules of criminal law are not founded upon legal fictions, and the doctrine of relation, however useful it may be as a rule defining or regulating private rights in a civil suit, has no application in criminal proceedings. On this point the rule, as stated in 3 Greenleaf's Evidence, sec. 211, is that if the woman was first violated and afterwards forgave the ravisher and consented to the act, still the particular offence in question being committed by force and against her will at the time of its commission, the crime is in legal estimation completed ; these circumstances being only admissible in evidence on the part of the respondent to disprove the allegation of the want of consent. The same rule is stated in 1 Russell on Crimes, 677, and also in Roscoe's Criminal Evidence, 860. It has never been regarded as a legal excuse for the consummated offence that the woman consented after the fact, and we regard this principle as being applicable to the case of an assault with an intent to commit a rape as well as to the higher offence. It is, in our judgment, decisive of the questions raised in this case, and as we find no error in the instructions given by the court to the jury, the respondent's exceptions are overruled.

On the application of the respondent the case was remanded to the county court to pass sentence.